**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**COLUMBIA DIVISION**

| | | |
|---|---|---|
| Carson Smith and Eva Smith, | ) | Civil Action No.: 3:19-cv-02155-JMC |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | |
| | ) | **ORDER AND OPINION** |
| Brian "Jay" Koon, Sheriff's Department | ) | |
| of Lexington County, Thomas J. | ) | |
| Bonnette, Jr., Sgt. Miles Rawl, and | ) | |
| John Does 1 through 5, *individually and* | ) | |
| *in his/their official capacity*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff Carson Smith ("Carson") and his mother, Plaintiff Eva Smith ("Eva"), brought this suit claiming the above-captioned Defendants violated Plaintiffs' constitutional rights and various state laws when Carson was arrested on October 13, 2017. (*See* ECF No. 1-1.) This matter is before the court on Defendants' Motion for Summary Judgment. (ECF No. 13.)

In accordance with 28 U.S.C. § 636(b) and Local Rule 73.02(B)(2)(g) D.S.C., the matter was referred to the United States Magistrate Judge for pretrial handling. In August 2020, the Magistrate Judge issued the Amended Report and Recommendation ("Report") in which she recommended the court grant in part and deny in part Defendants' Motion for Summary Judgment and dismiss all claims except for "(1) Carson's § 1983 claim against Bonnette, in his individual capacity, for unlawful seizure and (2) Plaintiffs' negligence/gross negligence claim against Koon."[1] (ECF No. 23 at 49.)

Objections to the Report were filed by Plaintiffs (ECF No. 26) and Defendants (ECF No. 27), which are presently before the court. Plaintiffs replied to Defendants' Objections (ECF No.

---

[1] The Magistrate Judge also denied Defendants' Motion to Strike Sur Reply (ECF No. 17) and granted Plaintiffs' unopposed Motion to Amend (ECF No. 18).

28), and Defendants likewise replied to Plaintiffs' Objections (ECF No. 29).

For the reasons set forth below, the court **GRANTS** in part and **DENIES** in part Defendants' Motions for Partial Summary Judgment. (ECF No. 13.) Plaintiff Carson's § 1983 claim for malicious prosecution against Bonnette in his individual capacity survives. Summary judgment is granted as to all other claims against Defendants. The court **ACCEPTS** in part, **REJECTS** in part, and **MODIFIES** in part the Magistrate Judge's Report and Recommendation (ECF No. 23) and incorporates it herein by reference as set forth below.

## I.     RELEVANT BACKGROUND TO PENDING MOTION[2]

Christopher Raines, also known as A.J. Blues, lived on several acres of land next to a local convenience store called the Gator Mart. Plaintiffs' version of the facts insists that on the night of October 6, 2017, Carson pulled into the Gator Mart's parking lot while driving a Ford Explorer.[3] (ECF No. 23 at 4.) His older brother, Grant Smith ("Grant"), likewise pulled into the Gator Mart driving a Ford F-150. (*Id.*) Shortly after the Smith brothers' arrival, Raines purportedly threatened Carson with a crossbow. (*Id.* at 4-5.)

The above incident was not an isolated one. Plaintiffs contend numerous negative interactions had previously occurred between the Smiths and Raines, including an incident wherein Raines' stepfather argued with the Smith brothers at the Gator Mart, retrieved a gun, threatened the brothers, and was subsequently criminally charged. (*Id.* at 3.) The Smiths attended Raines' stepfather's bond hearing and required "the intervention of security to allow Eva and Grant to exit the parking lot without Raines recording their tag number." (*Id.* at 4 n.2.) Raines also allegedly posted a video on social media "threatening Carson's family," and otherwise posted "multiple

---

[2] The Report sets forth the relevant facts and legal standards, which this court adopts and incorporates herein without a full recitation.

[3] Carson was seventeen at the time of the October 2017 incident.

social media warnings, complaints, video threats, and stated threats to" River Bluff High School ("RBHS") students. (*Id.* at 1-2 n.1.) Carson attended that school. (*Id.*)

On the night in question, and after Raines allegedly threatened the brothers with a crossbow, Grant called the police. (*Id.* at 5-6.) During the call, Grant identified himself as Carson and stated, *inter alia*, "[t]here is a man who is running in the middle of the road with a crossbow threatening people that drive by[,]" and identified the man as Raines.[4] (*Id.* at 6.) Later, both Grant and Carson gave statements to an officer. (*Id.* at 5-7.) Grant recalled the officer asking if Grant had previously revved his vehicle's engine when passing the Raines residence. (*Id.* at 7.) Grant insisted he simply "gave it gas" to "get out of the way of the strong spotlight that Mr. Raines was shining on him as he drove down Mill Stream [Road]."[5] (*Id.* (citation and internal marks omitted).) Over the next few days law enforcement allegedly made one or more attempts to contact the Smith brothers to no avail. (*Id.*) On October 13, 2017, an officer informed Eva that arrest warrants had been issued for her sons. (*Id.*). Her sons then turned themselves in, with Carson spending a night in prison and thereafter receiving an ankle monitor. (*Id.* at 7-8.)

Unsurprisingly, Defendants' version of the facts differs somewhat. On October 6, 2017, Defendants first received a 911 call from Raines, who "report[ed] the movements of Grant and Carson as [they] exit[ed] the Gator Mart and as Grant return[ed] to the Gator Mart, stating 'both Smith kids' have been 'harassing us all night.'" (*Id.* at 8 (citing 14-13).) Subsequently, Defendants received the above-referenced 911 call from Grant. (ECF No. 23 at 8-9.) Officer J.J. Bice responded to the call, traveled to the Gator Mart, took the Smith brothers' statements, and drafted

---

[4] Grant later attested that he mistakenly referred to himself as Carson during the call: "In the confusion of listening to my mom talking and the dispatcher talking, I said my name was Carson instead of saying he was the victim (the one Mr. Raines was yelling at and advancing towards), which is what I intended to convey." (ECF No. 23 at 6.)

[5] Mill Stream Read runs in front of both the Gator Mart and the Raines' residence. (*See* ECF No. 14-18 (aerial view of the properties).)

a report on the matter ("Incident Report"). (*Id.* at 9.) Bice claims he noticed inconsistencies with the statements, such as whether Raines remained on his own property or crossed onto the Gator Mart's property during the incident. (*Id.*) Bice also noted that Raines told him "the two boys were revving their engines and yelling at him while driving past his residence," and that Raines insisted he had video evidence to prove it. (*Id.*) Later, Bonnette reviewed surveillance videos of the incident that Raines provided. (*Id.* at 10.) Bonnette concluded the videos "clearly showed that Raines never left his property and never pointed a crossbow at anyone." (*Id.* at 10 (citation omitted).)

Law enforcement was also aware of numerous documented "negative interactions . . . between Raines and members of the Smith family," with "[t]he vast majority of these negative interactions involv[ing] two vehicles, a red Ford Explorer bearing SC tag number 'KYP203' and a 1986 Ford F150 pickup truck bearing SC tag number 'MKF336,'" vehicles owned by Eva and [purportedly] driven by either Carson or Grant." (*Id.* at 10 (citations omitted).) Officers attempted to set up a meeting with the Smiths but were unsuccessful. (*Id.* at 11.) Based on the above evidence, arrest warrants were then issued for the Smith brothers for first degree harassment. (*Id.* at 11-13.)

Ultimately, the prosecutor assigned to the case "dismissed the charge against Carson Smith . . . because there was insufficient evidence to prosecute." (*Id.* at 13.) Although the prosecutor "believed there was overwhelming evidence supporting a finding of probable cause for the arrest of Carson Smith, he also believed the burden in proving beyond a reasonable doubt at trial would be difficult and that Raines 'would likely have been an impeachable witness and possibly disliked by the jury.'"[6] (*Id.* (citation omitted).)

Subsequently, Plaintiffs brought the instant suit alleging Defendants "violated their Fourth, Eighth, and Fourteenth Amendment rights due to Carson's unlawful seizure and for malicious

---

[6] Carson successfully expunged all arrest records. (ECF No. 23 at 13.)

prosecution. Plaintiffs further assert[ed] the following state law causes of action against all Defendants: (1) false imprisonment, (2) malicious prosecution, (3) negligence/gross negligence, and (4) civil conspiracy." (*Id.* at 15.)

## II.    JURISDICTION

This court has jurisdiction over Plaintiffs' federal law claims via 28 U.S.C. § 1331, as the claims arise under a law of the United States. Additionally, the court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(a), because these claims "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." *Id.*

## III.    LEGAL STANDARD

A.    Report and Recommendation

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with this court. *See Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). The court reviews *de novo* only those portions of a magistrate judge's report and recommendation to which specific objections are filed, and reviews those portions which are not objected to–including those portions to which only "general and conclusory" objections have been made–for clear error. *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005); *Camby v. Davis*, 718 F.2d 198, 200 (4th Cir. 1983); *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). The court may accept, reject, or modify, in whole or in part, the recommendation of the magistrate judge or recommit the matter with instructions. *See* 28 U.S.C. § 636(b)(1).

B.  Motion for Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine issue of material fact for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

When considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under governable law will properly preclude the entry of summary judgment." *Id.* at 248. Further, to show that a genuine issue of material fact exists, the non-moving party must set forth facts beyond "[t]he mere existence of a scintilla of evidence." *Id.* at 252. The non-moving party must present evidence sufficient to demonstrate that a reasonable jury could return a verdict for the non-moving party in order to avoid summary judgment. *See id.* at 248.

## IV.    ANALYSIS

A.    Report and Recommendation

In August 2020, the Magistrate Judge issued the Report suggesting the court grant in part and deny in part Defendants' Motion for Summary Judgment. (ECF No. 23.) In the Report, the Magistrate Judge began with Plaintiffs' federal claims. (*Id.* at 15.) The Magistrate Judge first recommended dismissing Plaintiffs' § 1983 claims against Bonnette and Rawl brought against

them in their official capacities based upon Eleventh Amendment immunity. (*Id.* at 15-17.)

The Magistrate Judge then examined the unlawful seizure claim against Bonnette, explaining that Plaintiffs needed to show Bonnette's seizure relied upon a "belief that a violation occurred was not only incorrect, but was objectively unreasonable. (*Id.* at 20 (quoting *Hewitt v. D.P. Garrison*, C/A No. 6:12-3403-TMC, 2013 WL 6654237, at *3 (D.S.C. Dec. 17, 2013)).) Highlighting the summary judgment standard, the Magistrate Judge found a "jury could conclude that Bonnette violated Carson's Fourth Amendment rights by, 'knowingly and intentionally or with reckless disregard for the truth,' making false statements and omitting facts in his affidavit, rendering the affidavit misleading, and that he was objectively unreasonable in his belief that Carson harassed Raines on the night in question." (*Id.* at 20 (citation omitted).)

In particular, the Magistrate Judge reviewed each piece of information Bonnette relied upon to craft his affidavit in support of the arrest warrant. (*Id.*) First, the Magistrate Judge observed previous police reports did not reveal that Carson was involved in prior run-ins with Raines that could be construed as harassment, and that "Bonnette conceded in his deposition [such] reports do not indicate prior altercations between Carson Smith and Christopher Raines."[7] (*Id.* at 22 (internal marks omitted).) Without this backdrop of interaction, the Magistrate Judge explained, there was "no probable cause that Carson was harassing Raines on the night in question as defined by South Carolina law." (*Id.*)

Second, the Magistrate Jude concluded that surveillance of the incident in question "reveal[ed] nothing clearly" by video, despite the vigorous insistence of the parties. (*Id.* at 22-23.) Although the video was almost completely black, the Magistrate Judge noted the audio indicated that Raines possessed an item or weapon that "was cocked," and Raines "called out, apparently to

---

[7] Grant was identified in one or more prior police reports. (ECF No. 23 at 21-22.)

the Smith boys, threatening phrases including . . . 'life is better than being a gimp.'" (*Id.* at 23 (citation omitted).) Again emphasizing the summary judgment standard, the Magistrate Judge found such evidence supported Plaintiffs' version of the facts that Raines possessed a weapon and threatened the Smith brothers on the night in question. (*Id.*)

Third, the Magistrate Judge turned to alleged inconsistencies in the statements and calls made on or about the night in question. The Magistrate Judge pointed out that, by affidavit, Bonnette claimed Grant's call to 911 stated Grant's belief that Raines was "chasing people around at the Gator Mart with a crossbow . . . [but subsequently,] when reporting the incident to Bice, both [Smith brothers] denied that Raines ever left his property[.]" (*Id.* at 24.) Yet the Magistrate Judge's review of the 911 call's audio revealed that Grant actually stated "there is a man who is running in the middle of the road with a crossbow threatening people that drive by," without mentioning whether Raines ever left his property. (*Id.* at 25.) The Magistrate Judge further noted there is a "road that exists on Raines' property *between* his home and the Gator Mart," as well as a road that runs in *front* of the Gator Mart and the Raines residence (i.e., Mill Stream Road). (*Id.* (emphasis added).) Thus, in the most favorable light to Plaintiffs, the Magistrate Judge decided the Smith brothers neither contradicted themselves nor recanted prior statements by telling Bice that Raines never left his property, as Raines could have been on the road located on his property. (*Id.*)

Lastly, the Magistrate Judge observed the only evidence indicating that "Carson or Grant ever stated that Raines was located at the Gator Mart" was a call report summarizing the 911 call and the Incident Report. (*Id.* at 26.) By relying on such evidence as well as (crucially) the dispatch call itself, the Magistrate Judge explained, Bonnette "would have known the call report and

[I]ncident [R]eport did not accurately capture what the caller stated." (*Id.*)

After reviewing the above evidence, the Magistrate Judge concluded that Plaintiffs carried their burden of showing Bonnette "must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported," because "none of the sources in Bonnette's possession or relied upon by Bonnette indicates prior harassment by Carson of Raines, nor indicates that on the night in question Carson's dispatch call was made to harass Raines or that Carson provided inaccurate information."[8] (*Id.* at 27 (quoting *Nero v. Mosby*, 890 F.3d 106, 129 (4th Cir. 2018)).) After "excis[ing] the offending inaccuracies," the Magistrate Judge went on to deduce that "the corrected affidavit would not provide adequate grounds" to arrest Carson. (*Id.* (citation omitted).)

The Magistrate Judge then scrutinized Defendants' contention that Bice simply relied heavily on Raines' version of events on the night in question to establish probable cause. (*Id.* at 28.) The Magistrate Judge found that

> a genuine dispute of material fact as to whether Bonnette had reason to doubt the truthfulness of Raines's statements, given, as attested to by Bonnette, "the long history in which this situation had continued to fester between the two families," that the video evidence reveals Raines threatening Grant and Carson, that Bonnette was aware of Raines's history of threatening RBHS students, and that Bonnette knew Raines had carried a crossbow in the previous altercation with Grant and Carson that led to [Raines' stepfathers'] arrest[.]

(*Id.* at 28-29 (internal citations omitted).) As a consequence, the Magistrate Judge concluded a finding of qualified immunity for Bonnette was inappropriate at this stage, as "no reasonable and prudent person would find the evidence relied upon by Bonnette established probable cause that Carson harassed Raines." (*Id.* at 29 (citing *Robinson v. Miller*, 802 F. App'x 741, 748 (4th Cir.

---

[8] The Magistrate Judge also rejected Defendants' claim that probable cause existed for other crimes, such as "filing of False Police Reports," because "Defendants' position that Carson . . . made false statements . . . and made a false police report" were unsupported by the record. (ECF No. 23 at 27 n.23 (citations and internal marks omitted).)

2020)).) The Magistrate Judge thus suggested denying summary judgment on "Carson's § 1983 claim against Bonnette, in his individual capacity, for Carson's unlawful seizure." (ECF No. 23 at 30.)

From there, the Magistrate Judge moved to another of Carson's federal claims: an allegedly unlawful seizure by Rawl. (*Id.*) The Magistrate Judge began by mentioning that "a causal connection or affirmative link must exist between Rawl and the constitutional violation," and noting "the doctrine of supervisory liability is generally inapplicable to § 1983 suits[.]" (*Id.* (citation omitted).) Rather, the Magistrate Judge continued, "a plaintiff must plead that each Government-official Defendant, through the official's own individual actions, has violated the Constitution." (*Id.* at 31 (citations omitted).) The Magistrate Judge then concluded, *inter alia*, that Plaintiffs had not shown Rawl had personally violated Carson's constitutional rights. (*Id.* at 31-32.) Although Plaintiffs made various allegations against Rawl, the Magistrate Judge observed that "Plaintiffs fail[ed] to connect these allegations to a specific claim alleging a constitutional violation or that Rawl was somehow involved in Bonnette's alleged affidavit misrepresentations or omissions." (*Id.* at 32 n.25.) The Magistrate Judge accordingly recommended dismissing Plaintiffs' unlawful seizure claim against Rawl. (*Id.* at 32.)

Next, the Magistrate Judge reviewed Plaintiffs' federal malicious prosecution claim. (*Id.*) The Magistrate Judge expounded that this claim required Defendants to have "(1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in plaintiff's favor." (*Id.* (citation omitted).) The Magistrate Judge decided Plaintiffs failed at element three, as they had not shown Carson's criminal case terminated in his favor. (*Id.* at 34-35.) The Magistrate Judge specifically pointed to recent precedent by the Fourth Circuit Court of Appeals to find that "a *nolle prosse* alone will not establish favorable termination."

*Salley v. Myers*, 971 F.3d 308, 313 (4th Cir. 2020). (*See* ECF No. 23 at 35.) Further, the Magistrate Judge emphasized the prosecuting attorney's affidavit, which represented that he did not dismiss Carson's charges for reasons consistent with innocence; instead, the prosecutor believed "overwhelming evidence" supported probable cause for the arrest. (*Id.*) Although other evidence supported Carson's actual innocence, the Magistrate Judge concluded such "evidence [wa]s insufficient to allow a juror to reasonably infer that the case had been dismissed for reasons consistent with Carson's innocence." (*Id.* at 35-36.) Consequently, the Magistrate Judge suggested dismissing the federal claim for malicious prosecution. (*Id.*)

For Plaintiffs' state law claims, the Magistrate Judge remarked they all were "brought pursuant to the South Carolina Tort Claims Act ("SCTCA")." (*Id.*) As an initial matter, the Magistrate Judge recommended "dismissal of all state law claims against all Defendants except Koon" because "the Sheriff of Lexington County is the proper defendant for Plaintiffs' state law claims" according to state law.[9] (*Id.*) Moreover, the Magistrate Judge found that Eva was "a proper party to Plaintiffs' SCTCA claims" because she had sufficiently established she suffered a "loss" under the SCTCA as Carson's parent. (*Id.* at 38-39.)

Turning to the state claim for malicious prosecution, the Magistrate Judge relied primarily on her earlier reasoning to conclude this claim should be dismissed because "the record shows that the charge of first degree harassment against Carson was *nolle prossed* for reasons that do not imply or are consistent with innocence." (*Id.* at 40.) The Magistrate Judge reached a similar conclusion for Plaintiffs' state law claim for false arrest. (*Id.*) As Carson was arrested using a "facially valid warrant," the Magistrate Judge applied South Carolina precedent to conclude that Carson "has no cause of action for false arrest." *Carter v. Bryant*, 838 S.E.2d 523, 528 (S.C. Ct.

---

[9] The Magistrate Judge noted that Plaintiffs failed to respond to arguments surrounding the proper defendants for the state law claims. (ECF No. 23 at 37.)

App. 2020). (*See* ECF No. 23 at 41-43.)

However, the Magistrate Judge suggested denying summary judgment on Plaintiffs' negligence/gross negligence claims. (*Id.* at 46.) The Magistrate Judge rejected Defendants' contention that a "public duty rule" barred any claims "for negligent investigation or negligent arrest." (*Id.* at 44.) Instead, the Magistrate Judge clarified that the public duty rule only applies when "the plaintiff relies upon a statute as creating the duty." (*Id.*) By contrast, the Magistrate Judge explained, Plaintiffs did not rely on any statutorily created duty; rather, Plaintiffs attached their negligence claims to an officer's common law duty of care. (*Id.* (citing *Murphy v. Fields*, C/A No. 3:17-2914-CMC, 2019 WL 5417735, at *8 (D.S.C. Oct. 23, 2019) (denying defendant Richland County Sheriff's Office's motion for summary judgment as to claims for negligence and gross negligence based on officer's actions in effecting plaintiff's arrest)).) The Magistrate Judge thus concluded that, in the light most favorable to Plaintiffs, their negligence claims should survive. (ECF No. 23 at 46.)

Finally, the Magistrate Judge inspected Plaintiffs' civil conspiracy claim under state law. (*Id.*) The Magistrate Judge determined that Plaintiffs had provided no evidence to support their assertion that Bonnette and Rawl "combined to provide the magistrate with false information and evidence" to establish probable cause. (*Id.* at 47 (citation omitted).) Moreover, the Magistrate Judge decided that Plaintiffs had "failed to allege or provide evidence that Rawl or Bonnette acted outside the scope of the employment." (*Id.* at 48.) Accordingly, the Magistrate Judge suggested dismissing the civil conspiracy claim.

In sum, the Magistrate Judge recommended dismissing all of Plaintiffs' federal claims except for "Carson's § 1983 claim against Bonnette[] in his individual capacity[] for Carson's unlawful seizure[.]" (*Id.* at 36.) The Magistrate Judge relatedly suggested dismissing all state law

claims except 'Plaintiffs' negligence/gross negligence claim against Koon." (*Id.* at 50.)

B.     Objections

Both sides offered Objections to the Report (*see* ECF Nos. 26, 27) and Replies to each other's Objections (*see* ECF Nos. 28, 29). These contentions are outlined below.

*(1) Plaintiffs' Objections*

Plaintiffs object to the findings underlying the dismissal of their state and federal malicious prosecution claims, as well as Rawl's exclusion from the § 1983 unlawful seizure claim. (ECF No. 26 at 1-2.) For the malicious prosecution claims, Plaintiffs take aim at whether the *nolle prosse* was favorable to Carson, and insist that "[a] jury, when provided with the evidence in this record, could find that there was in fact no evidence of grounds to support the charge against Carson[.]" (*Id.* at 4.) Plaintiffs further decry relying on the prosecutor's affidavit, asserting that "[i]f a prosecutor can simply state or imply that the reason was not consistent with the accused's innocence, the determination of a summary judgment motion would be solely with the prosecutor." (*Id.* at 10.) Regardless, Plaintiffs note that one of the several reasons the prosecutor listed for dismissal was "insufficient evidence," which is indicative of a favorable dismissal. (*Id.* at 12.) Plaintiffs also mention that Carson's charge was dismissed nine months after it was brought, after Eva had given her "narrative" of certain video evidence to officers, and after another officer stated his belief that a case did not exist against Carson. (*Id.* at 7-8.)

Moreover, Plaintiffs claim Rawl "actively participated in the provision of the false evidence and the initiation of the arrest and prosecution of Carson Smith," which was sufficient to establish an unlawful seizure. (*Id.* at 13.) Plaintiffs list numerous ways in which they claim Rawl was involved in the arrest, as well as that Rawl "engaged personally in the investigation leading to the arrest and acted in reckless disregard of . . . [Carson's] rights along with Deputy Bonnette."

(*Id.* at 13-15.) Further, Plaintiffs allege that Rawl "provided portions of the information to Bonnette in initiating the arrest and then turned a blind eye to the fact that the evidence cited in the warrant affidavit in no way provided evidence or grounds that Carson Smith had committed the charged crime." (*Id.* at 15-16.) Based on his "active[] participat[ion] and/or his knowledge as Bonnette's supervisor, Plaintiffs maintain that Rawl should remain as a Defendant. (*Id.* at 16.)

In response, Defendants initially observe Plaintiffs raised a new argument contending Rawl personally participated in the alleged constitutional violation, which the Magistrate Judge did not consider. (ECF No. 29 at 2.) Regardless, Defendants point out that Rawl was not a participant in Carson's arrest, such that he was not the affiant for the warrant and did not present it to a judge. (*Id.* at 4.) Moreover, Defendants echoed the Magistrate Judge's findings that supervisory liability is generally barred under § 1983 unless the official "acted personally in the deprivation of the plaintiff's rights." (*Id.* at 4-5 (citation omitted).) And for malicious prosecution, Defendants highlight that Plaintiffs seem to be making a "temporal" connection between Eva's narrative to officers and the dismissal of the charge. (*Id.*) However, Defendants insist there is no evidence to support the inference that Carson's charge was dismissed for any reasons beyond those outlined in the prosecutor's affidavit. (*Id.* at 9-10.)

*(2) Defendants' Objections*

Defendants object to the Magistrate Judge's findings that the claims for unlawful seizure against Bonnette and negligence/gross negligence against Koon survived. (ECF No. 27 at 1-2.) Defendants contend that, "because Plaintiffs have failed to show . . . Carson's criminal proceedings were terminated in his favor, Plaintiffs' Fourth Amendment claim fails." (*Id.* at 5.) They expound that the proper analysis for an unlawful seizure claim involving an arrest warrant includes whether the proceedings were terminated in the plaintiff's favor, rather than simply whether probable cause

14

existed for the arrest, as the Magistrate Judge determined. (*Id.*) Relatedly, Defendants emphasize that, in any event, probable cause existed to support the arrest warrant, in part because Carson and Raines did in fact have prior interactions. (*Id.* at 5-7 (citations omitted).) Defendants further assert that, even ignoring these interactions, probable cause still existed for filing a false police report and making a false 911 call. (*Id.* at 7.)

Turning to video evidence of the night in question, Defendants assert that Bonnette's reliance on the video was objectively reasonable in his determination of probable cause. (*Id.* at 8.) Defendants similarly argue that the 911 call report states the caller asserted that Raines was on the Gator Mart's property with a crossbow, even if the audio of the call does not mention whether Raines crossed the property line. (*Id.* at 9.) Defendants further aver that Bonnette was not unreasonable in assuming the road referenced in the call was not the one that ran through Raines' property. (*Id.*) And regarding Raines' credibility, Defendants stress no evidence demonstrates that Bonnette should have identified any of Raines' "motives or alleged unreliability . . . at the time the arrest warrant was sought." (*Id.*) Defendants relatedly take issue with the finding that "video evidence shows Raines threatening Grant and Carson." (*Id.* at 10.) Accordingly, Defendants maintain that Bonnette is entitled to qualified immunity, as any mistaken conclusion of the existence of probable cause for Carson's arrest was reasonable. (*Id.* at 11-14.)

Defendants also dispute the findings surrounding Plaintiffs' negligence/gross negligence claims. (*Id.* at 14.) Citing to several cases, Defendants contend that such claims can only survive against law enforcement in South Carolina when a "special circumstance" creates some type of duty. (*Id.* at 14-17.) Moreover, Defendants maintain such claims are barred based upon sovereign immunity. (*Id.* at 17-18.)

Plaintiffs believe that Defendants are mistaken regarding the applicable Fourth Amendment analysis for the unlawful seizure claim. (ECF No. 28 at 3-6, 9-13.) Plaintiffs likewise dismiss Defendants' suggestions that video and audio evidence did not show Raines threatening the Smith brothers; Carson recanted factual statements; and probable cause existed for the arrest. (*Id.* at 6-8.) Plaintiffs further allege Bonnette knew enough to entertain doubts about Raines' credibility, and should have completed at least "some sort of investigation[.]" (*Id.* at 7-8 (citation omitted).) Similarly, Plaintiffs believe qualified immunity does not attach to Bonnette at this stage because he unreasonably determined the existence of probable cause. (*Id.* at 8-9.)

Regarding negligence/gross negligence, Plaintiffs discard Defendants' State Circuit Court Orders as holding "no precedent [and] . . . not clearly consider[ing] the specific issues in this case." (*Id.* at 14.) After gratuitously citing the Report, Plaintiffs point out that Defendants shoulder the burden of showing an exception to the SCTCA is applicable, yet note that such immunity "is not applicable to operational decisions and the determination of probable cause[.]" (*Id.*) Thereafter, Plaintiffs reemphasize the evidence they believe demonstrates gross negligence in this case. (*Id.* at 15.)

C.    The Court's Review

       *(1) Objections Regarding § 1983 Claims*

Plaintiffs have objected to the finding that Rawl is not liable under § 1983 for an unlawful seizure. (ECF No. 26 at 13-16.) By contrast, Defendants have objected to the finding that the § 1983 claim against Bonnette survived.[10] (ECF No. 27 at 5-14.) Defendants specifically dispute

---

[10]  The findings within the Report include separate analyses and reasoning for a malicious prosecution claim, an unreasonable seizure by Bonnette, and an unreasonable seizure by Rawl. However, the court observes these claims are essentially one claim under § 1983 for malicious prosecution; the court has therefore combined these matters into one subsection of analysis. Plaintiffs' Complaint alleges that Defendants arrested Carson "without probable cause" and, by continuing "to prosecute and restrain him[,]" violated Carson's constitutional rights. (ECF No. 1-

16

whether Bonnette had probable cause for the arrest warrant and whether Carson's charge of harassment was terminated in his favor. (*Id.*)

A § 1983 claim requires Plaintiffs to "prove by a preponderance of the evidence that: (1) the defendant engaged in conduct which deprived plaintiff of a federal constitutional or statutory right, (2) that the defendant was acting under color of law, and (3) that the acts of that defendant proximately caused the plaintiff's damages." *Daniczek v. Spencer*, 156 F. Supp. 3d 739, 747 (E.D. Va. 2016) (citation omitted) (noting § 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred"). At issue is the first element, whether Defendants deprived Plaintiffs of a constitutional right. Plaintiffs point to the Fourth Amendment for support, alleging Defendants unlawfully seized Carson.

As expounded by the Magistrate Judge:

> To prove a seizure was unreasonable because it followed from a deficient warrant, plaintiff is required to prove defendants deliberately or with a "reckless disregard for the truth" made material false statements in [her] affidavit," *Franks v. Delaware*, 438 U.S. 154, 171 (1978), "or omitted from that affidavit 'material facts with the intent to make, or with reckless disregard of whether [she] thereby made, the affidavit misleading.'" *Miller v. Prince George's County*, MD, 475 F.3d 621, 627 (4th Cir. 2007) (citing *United States v. Coakley*, 899 F.2d 297, 300 (4th Cir. 1990)). "[I]n order to violate the Constitution, the false statements or omissions must be 'material,' that is, 'necessary to the [neutral and disinterested magistrate's] finding of probable cause." *Id.* at 628 (citing *Franks*, 438 U.S. at 155-56).

> Additionally, under the qualified immunity defense, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have

---

1 at 8.) Plaintiffs also seek monetary damages. (*Id.* at 9.) The Fourth Circuit has held that "§ 1983 actions seeking damages for unconstitutional arrest or confinement imposed pursuant to legal process—claims most analogous to the common-law tort of malicious prosecution—must allege and prove a termination of the criminal proceedings favorable to the accused[.]" *Brooks v. City of Winston-Salem, N.C.*, 85 F.3d 178, 183 (4th Cir. 1996). Accordingly, Plaintiffs' § 1983 claim as pled in the Complaint—at least, those portions to which Defendants have objected—amounts to a malicious prosecution claim. Further, the court notes that although the Report correctly contains a discussion of malicious prosecution, the separate analysis of an unreasonable seizure by Bonnette omits the necessary determination of whether Carson received a favorable termination.

known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity ensures that "[o]fficials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992). Whether an officer is entitled to qualified immunity is a question of law for the court and, when there are no relevant disputed material facts, a court should rule on the qualified immunity issue at the summary judgment stage. *Willingham v. Crooke*, 412 F.3d 553, 558 (4th Cir. 2005) ("Ordinarily, the question of qualified immunity should be decided at the summary judgment stage.").

To resolve a qualified immunity defense, the court must (1) determine whether the facts alleged, taken in the light most favorable to the plaintiff, show that the defendant's conduct violated a constitutional right, and (2) determine whether the right was clearly established at the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Courts may address the two prongs of the qualified immunity analysis in whichever order is appropriate in light of the circumstances of the particular case at hand. *Id.*

(ECF No. 23 at 18-19.)

As previously noted, Plaintiffs' § 1983 claims, as pled, essentially amount to a malicious prosecution claim. "A 'malicious prosecution claim under § 1983 is properly understood as a Fourth Amendment claim for unreasonable seizure which incorporates certain elements of the common law tort.'" *Evans v. Chalmers*, 703 F.3d 636, 647 (4th Cir. 2012) (quoting *Lambert v. Williams*, 223 F.3d 257, 261 (4th Cir. 2000). To state a claim for malicious prosecution, "a plaintiff must allege that the defendant (1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in plaintiff's favor." *Evans*, 703 F.3d at 647; *see Prince George's Cty.*, 475 F.3d at 627 (quoting *Brooks*, 85 F.3d at 183-84) (observing a plaintiff must allege "that police seized him 'pursuant to legal process that was not supported by probable cause and that the criminal proceedings terminated in his favor'").

In determining whether a *nolle prosse* is favorable, the Fourth Circuit has found that a prosecutor's given reasons for dismissal are not beyond appraisal. *See Salley*, 971 F.3d at 314. In *Salley*, the Fourth Circuit denied summary judgment for a malicious prosecution claim under South

Carolina law, as a dispute existed whether the *nolle prosse* was a favorable resolution to the case. *Id.* at 315. The Fourth Circuit examined the "circumstances surrounding the abandonment of the criminal proceedings" and explained that the plaintiff's testimony directly contradicted the prosecutor's[11] claim that he simply "cut [Salley] a break" by dismissing the charges, rather than doing so based on Salley's potential innocence. *Id.* at 313-14 (citation omitted). The Fourth Circuit further reasoned that a jury could find the prosecutor's stated reason for the *nolle prosse* of charges—i.e., the plaintiff's "age and the length of time between the arrest and trial"—were insufficient, as the plaintiff's age was already advanced when charged and the prosecutor could have "show[n] mercy" by not charging the plaintiff in the first place. *Id.* at 315. "Instead, the pending charge loomed over Salley for years, such that a jury could find [the prosecutor] would have *nolle prossed* the charge sooner if he was truly concerned about the lengthy delay." *Id.* The Fourth Circuit concluded that, "in the light most favorable to Salley, he ha[d] presented testimony that conflicts with [the prosecutor's] explanation, as well as corroborating circumstantial evidence from which a jury could reasonably infer that the *nolle prosse* was consistent with his innocence." *Id.*

As an initial matter, the court finds Plaintiffs simply rehash their arguments that Rawl, both personally and as Bonnette's supervisor, is liable under § 1983.[12] (*Compare* ECF No. 14 at 25-31,

---

[11] The prosecutor was also the arresting officer. *Salley*, 971 F.3d at 314.

[12] Although apparently not a new contention, Plaintiffs significantly expand their assertion that Rawl "actively participated in the provision of the false evidence and the initiation of the arrest and prosecution of Carson." (*Compare* ECF No. 14 at 30-31, *with* ECF No. 26 at 13-16.) Plaintiffs go on to claim Rawl was "engaged personally in the investigation leading to the arrest and acted in reckless disregard of [Carson's] rights along with Deputy Bonnette." (*Id.* at 13-15.) However, as Defendants observe, "Rawl was not the affiant on the arrest warrant, did not sign the arrest warrant, [and did not] present [the warrant] to the neutral magistrate judge." (ECF No. 29 at 4.) Nor, Defendants continue, is there "testimony in the record to suggest that . . . Rawl assisted in the preparation of the arrest warrant or the warrant affidavit[,] . . . was present at the time . . . Bonnette presented his evidence to the neutral magistrate judge[,] . . . [or] played any part in obtaining or executing the arrest warrant at issue." (*Id.* at 4-5.) Here, even if the court were inclined to consider

*with* ECF No. 26 at 13-16.) The Magistrate Judge properly reviewed these matters and determined the claim against Rawl should not survive. (*See* ECF No. 23 at 30-32.) As a consequence, the court declines to rehear these contentions, finds no clear error on the face of the record, and grants summary judgment as to Plaintiffs' § 1983 claim against Rawl.

Here, the court finds Plaintiffs' § 1983 claim against Bonnette in his individual capacity is not entitled to summary judgment. First, the court overrules Defendants' objections to the Magistrate Judge's findings surrounding probable cause. As the Magistrate Judge explained elsewhere in the Report, there was insufficient evidence to show a pattern of negative interactions specifically between Carson and Raines insofar as "no reasonable and prudent person would find the evidence relied upon by Bonnette established probable cause that Carson harassed Raines."[13] (ECF No. 23 at 28-29 (citation omitted).) Further, the Magistrate Judge properly found that, even though two separate videos reflected Raines making "numerous" complaints regarding the Smith brothers, it was unreasonable to rely on Raines' statements, based in large part on Raines' own behavior presented within such video evidence as well as his prior interactions with the Smith family. Indeed, despite Defendants' insistence to the contrary, video evidence appears to show Raines threatening the Smith brothers and does not seem to conflict with Carson's account of the

---

Plaintiffs' rehashed argument, there is simply insufficient evidence to support Plaintiffs' claims that Rawl "acted personally in the deprivation of the plaintiff's rights." (*Id.* at 4 (quoting *Davis v. Dep't of Soc. Servs. of Baltimore Cty.*, 941 F.2d 1206, at *5 (4th Cir. 1991)).

[13] Defendants cite to portions of Rawl's deposition (specifically, ECF No. "13-3, pp. 4, 7-9, 12, 16 and 31") to argue otherwise. Yet many of Defendants' cited pages make little to no relevant reference to Carson specifically, nor track with the document's (or ECF's) pagination. Regardless, Rawl appears to attest that the first negative mention of Carson in any police report regarding Raines stemmed from the October 6, 2017 incident. (*Id.* at 20:1-23.) The court also observes there was a prior incident wherein Raines allegedly possessed a crossbow and threatened to kill both Carson and Grant. (ECF No. 13-13 at 22.) Elsewhere in prior police reports, Raines mentioned that law enforcement "would be called to pick up a body" (*id.* at 24) and Raines would "put someone in a body bag tonight" (*id.* at 15), in reference to interactions with Grant and/or an unidentified individual driving a red Ford Explorer, which was the make, model, and color of a vehicle owned by Eva.

incident. *See Smith v. Munday*, 848 F.3d 248, 254 (4th Cir. 2017) ("An investigating officer need not exhaust[] every potential avenue of investigation. But an investigating officer must still conduct some sort of investigation and assemble individualized facts that link the suspect to the crime.")

Particularly, video evidence of the October 6, 2017 encounter with the Smith brothers saw Raines standing in proximity to what appears to be Mill Stream Road and the Gator Mart. (*See* ECF No. 14-13.) It appears undisputed that both Grant and Carson were in their vehicles. The video reflects that Raines spoke in a raised voice, apparently towards the direction of the Smith brothers' vehicles, declaring "ain't yall had enough tonight? Life is better than bein' a gimp." (*Id.* (beginning at time mark 8:10).)  Raines then apparently calls the police, and while on the phone yells "leave us alone" in the direction of one of the vehicles. (*Id.* (beginning at time mark 9:45).) The vehicle, apparently on Mill Stream Road at the time, slows and a voice can be heard responding "what?", to which Raines replies by shouting "leave us alone, you're not supposed to be around here." (*Id.*)

The audio and video evidence further supports that Raines held some type of weapon that used arrows throughout the encounter. Minutes before the encounter, Raines is heard stating "[g]rab that from between my legs, I gotta cock this. It's already cocked." (*Id.* (beginning at time mark 4:10).) As Raines says this, he hands what appears to be a bundle of arrows to an individual standing next to him. (*Id.*) And minutes after the incident, the instrument Raines is holding appears at the bottom right-hand corner of the screen for a brief moment during a series of clicking sounds, followed by at least two instances where an arrow's nock and fletchings are identifiable.[14] (*Id.*

---

[14] Fletchings are the plastic vanes or feathers located at the rear of an arrow that impact the arrow's flight. *Arrow*, https://en.wikipedia.org/wiki/Arrow#Fletchings (last visited March 24, 2021). A nock is a plastic cap on the rearmost of an arrow that snaps onto the bowstring and holds the arrow in place. *Id.*

(beginning at time mark 15:45).)

Elsewhere in the same video, Raines is heard saying the Smiths "have put charges against my stepfather," apparently in reference to criminal charges brought after Raines' stepfather threatened the Smith brothers with a weapon in front of numerous witnesses. (*Id.* (beginning at time mark 11:29).) He later states to the dispatcher that "I'm out here every night with my family and we do archery practice."[15] (*Id.* (beginning at time mark 14:19).) Taken together, such evidence supports the Magistrate Judge's conclusion that genuine disputes existed regarding

> whether Bonnette had reason to doubt the truthfulness of Raines's statements, given, as attested to by Bonnette, "the long history in which this situation had continued to fester between the two families," that the video evidence reveals Raines threatening Grant and Carson, that Bonnette was aware of Raines's history of threatening RBHS students, and that Bonnette knew Raines had carried a crossbow in the previous altercation with Grant and Carson that led to [Raines' stepfather's] arrest[.]

(ECF No. 23 at 28-29 (internal citations omitted).)[16]

Second, in the light most favorable to Plaintiffs, the court finds a genuine dispute exists whether Carson obtained a favorable dismissal of his charge.[17] The prosecutor's reasoning for

---

[15] And as Defendants admit, Bonnette was also at least somewhat aware of Raines' disturbing activity online and past problems with RBHS students. (*See* ECF No. 27 at 10.)

[16] Defendants again contend that Carson in fact did not know what type of weapon, if any, Raines held on the night in question. (ECF No. 27 at 8 n.2.) However, as explained by the Magistrate Judge, the full context of Carson's testimony reveals he more than simply "assumed" Raines possessed a crossbow. (*See* ECF No. 23 at 23-24 n.16.)

[17] Both the Magistrate Judge and Defendants observe that, in briefing before the Magistrate Judge, Plaintiffs did not specifically argue whether Carson's charge was favorably dismissed. (ECF Nos. 23 at 34; 29 at 7 n.1.) Instead, Plaintiffs raised several contentions that, while related to a favorable dismissal, primarily attacked the finding of probable cause. (*See* ECF No. 23 at 34.) Moreover, the court notes that a favorable dismissal and lack of probable cause are certainly different and distinct elements of a malicious prosecution claim. But here, the prosecutor specifically claimed that "overwhelming evidence of probable cause" existed to arrest Caron for harassment, despite the dismissal of the charge. (ECF No. 13-17 at 2.) In reviewing the totality of the circumstances for the charge's dismissal, including the prosecutor's stated reasons for *nolle prosse*, there is necessary overlap in the analysis of these two elements in this particular instance. Thus, given this overlap, as well as Plaintiffs' arguments before the Magistrate Judge and Plaintiffs' arguments now raised in their Objections, the court examines whether the charge was dismissed favorably.

dismissing the charge stated there was "insufficient evidence to prosecute," and further explained he "determined that while there was overwhelming evidence of probable cause for the arrest warrant for Carson Smith for the charge of Harassment/1st Degree Harassment, the burden in proving beyond a reasonable doubt at trial would be difficult." (ECF No. 13-17 at 2 (internal marks omitted).) The prosecutor relatedly noted that "Raines[] had also been arrested since the above-referenced arrest warrant . . . and would likely have been an impeachable witness and possibly disliked by the jury." (*Id.*)

Yet evidence in the record disputes the prosecutor's claim that "overwhelming evidence of probable cause" existed to arrest Carson for harassment, which alone is sufficient to raise a genuine dispute related to this element. As discussed above and within the Report, the information Bice relied upon to formulate the arrest warrant's supporting affidavit appears to lack a reasonable foundation for probable cause of harassment by Carson, much less "overwhelming" probable cause.[18] The prosecutor likewise does not explain why he chose to dismiss this charge only after it remained pending for nine months. Further, upon reviewing the evidence after Carson's charge was filed, at least one other officer apparently disagreed with the decision to charge the Smith brothers.[19] (ECF No. 14-2 at 5-6.) Such evidence raises at least the possibility that a jury could conclude Carson's charge was dismissed based upon his innocence.

It is true that, by highlighting Raines' credibility issues, the prosecutor may have been unable to "secure a crucial witness for [Carson's] trial." *Salley*, 971 F.3d at 315 (citation omitted). But Plaintiffs have pointed to at least some other evidence suggesting his charge was dropped due

---

[18] Relatedly, as noted above, the Magistrate Judge properly addressed and discarded Defendants' contention that probable cause existed for other charges. (*See* ECF No. 23 at 27 n.23.)

[19] Defendants attempt to contest this assertion by noting the officer at issue was not involved in the investigation or arrest, and that Eva "testified at her deposition that" her conclusion regarding a lack of probable cause to arrest Carson "was only her opinion based on her detective work and that nobody had advised her that probable cause did not exist[.]" (ECF No. 15 at 10 n.2.)

to his innocence, which is all that is required at this stage of the litigation. Further, Carson did not plead "guilty to other charges"; the "charge was not dropped in favor of prosecution in federal court"; and there is no indication Carson "remained a person of interest in an ongoing investigation" after the dismissal. *Id.* (compiling cases in which *nolle prosses* were not favorable) (citations omitted). Thus, as a genuine dispute exists whether Carson's *nolle prosse* was favorable, the court finds that Plaintiffs' federal claim for malicious prosecution is not entitled to summary judgment.

Otherwise, the court declines to consider Defendants' rehashed arguments that: Bonnette acted reasonably by concluding the evidence discussed above supported probable cause (*compare* ECF No.13-1 at 11-12, *with* ECF No. 27 at 8); Carson made and recanted statements on whether Raines left his property (*compare* ECF No.13-1 at 13-15, *with* ECF No. 27 at 8); and Bonnette's reliance on the call report as well as the actual audio of the 911 call led to the reasonable conclusion that probable cause existed (*compare* ECF No.15 at 7-8, *with* ECF No. 27 at 10-11).[20] The Magistrate Judge properly considered and addressed these disputations. (*See* ECF No. 23 at 20-30.) Consequently, the court likewise declines to rehear Defendants' contention that Bonnette was entitled to qualified immunity.[21] (*Compare* ECF No. 13-1 at 17-21, *with* ECF No. 27 at 11-14.) The court finds no clear error on the face of the record. At bottom, Carson's § 1983 claim for malicious prosecution against Bonnette in his individual capacity survives.

---

[20] The Magistrate Judge likewise properly addressed Defendants' argument that Bonnette reasonably assumed the "road" referenced in the 911 call was Mill Stream Road—rather than the road on Raines' property. (*See* ECF Nos. 23 at 25 n.21; 27 at 9.) *See Smith*, 848 F.3d at 254 ("An investigating officer need not exhaust[] every potential avenue of investigation. But an investigating officer must still conduct some sort of investigation and assemble individualized facts that link the suspect to the crime.")

[21] The court also notes "the parties do not dispute that only Carson, and not Eva, can bring a claim pursuant to § 1983 against Bonnette." (ECF No. 23 at 30.)

*(2) State Malicious Prosecution Claim*

Plaintiffs have objected to the dismissal of the malicious prosecution claim under state law. (ECF No. 26 at 1-2.) For a state claim for malicious prosecution, "a plaintiff must establish: (1) the institution or continuation of original judicial proceedings; (2) by or at the insistence of the defendant; (3) termination of such proceedings in [the] plaintiff's favor; (4) malice in instituting such proceedings; (5) lack of probable cause; and (6) resulting injury or damage."[22] *Pallares v. Seinar*, 756 S.E. 2d 128, 131 (S.C. 2014); *see also Huffman v. Sunshine Recycling, LLC*, 826 S.E.2d 609, 615 (S.C. 2019) ("In an action for malicious prosecution, malice may be *inferred* from a lack of probable cause to institute the prosecution" (citation omitted)).

Relatedly, "the SCTCA grants immunity from liability for any tort to the State, its political subdivisions, and employees, while acting within the scope of official duty, except as waived therein. *McCoy v. City of Columbia*, 929 F. Supp. 2d 541, 564 (D.S.C. 2013) (citing S.C. Code § 15–78–20(b) (2005)). "[T]he general rule is that the employer, not the employee, is named as the party defendant where the employee is acting within the scope of his or her employment." *McCoy*, 929 F. Supp. 2d at 564-65.

As an initial matter, Plaintiffs have not alleged that Bonnette or Rawl were acting outside the scope of their employment. In observing this, the Magistrate Judge concluded that all state claims should thus be dismissed against Defendants except for Koon, because "the Sheriff of Lexington County is the proper defendant for Plaintiffs' state law claims according to state law." (ECF No. 23 at 37.) The Magistrate Judge further noted Plaintiffs failed to respond to Defendants' contentions on this matter. (*Id.*) Likewise, Plaintiffs have failed to specifically object to this finding and the court finds no clear error on the face of the record. (*See* ECF No. 26.) Thus, what remains

---

[22] For the state malicious prosecution claim, Defendants insist Plaintiffs have not shown malice. The court addressed the elements of probable cause and favorable dismissal above.

is whether Plaintiffs may pursue a state malicious prosecution claim against the Sheriff of Lexington County.

Here, the court finds the state malicious prosecution claim shall be dismissed based upon SCTCA immunity. The first element of this claim requires "the institution or continuation of original judicial proceedings." *Pallares*, 756 S.E. 2d at 131. However, the SCTCA explicitly provides that a "governmental entity is not liable for a loss resulting from" the "institution or prosecution of any judicial or administrative proceeding[.]" S.C. Code § 15-78-60(23). As a governmental entity, the Sheriff of Lexington County is therefore immune from this claim.[23] *See McCoy*, 929 F. Supp. 2d at 567 n.10 (finding the City of Columbia was immune from a state malicious prosecution claim based upon S.C. Code § 15-78-60(23)); *Bellamy v. Horry Cty. Police Dep't*, No. 4:19-CV-03462-RBH-KDW, 2020 WL 2559544, at *5 (D.S.C. Apr. 30, 2020), *report and recommendation adopted*, No. 4:19-CV-03462-RBH-KDW, 2020 WL 2556953 (D.S.C. May 20, 2020) (finding Defendant Horry County Police Department was immune from a state malicious prosecution claim based upon S.C. Code § 15-78-60(23)). Accordingly, Defendants are entitled to summary judgment on Plaintiffs' state malicious prosecution claim.

### (3) State Negligence/Gross Negligence Claims

Defendants have objected to the finding that Plaintiffs' negligence claims survive. (ECF No. 27 at 1-2.) To successfully bring a negligence claim, there must be "a legal duty of care owed by the defendant to the plaintiff." *Newkirk v. Enzor*, 240 F. Supp. 3d 426, 437 (D.S.C. 2017) (quoting *Edwards v. Lexington Cty. Sheriff's Dep't*, 688 S.E.2d 125, 128 (S.C. 2010)). "A plaintiff alleging negligence on the part of a governmental actor or entity may rely either upon a duty created by statute or one founded on the common law." *Edwards*, 688 S.E.2d at 128. "Under the

---

[23] The SCTCA defines a "[g]overnmental entity" as "the State and its political subdivisions." S.C. Code § 15-78-30(d). (*See also* ECF No. 23 at 36-38.)

'public duty rule,' 'statutes which create or define the duties of a public office create no duty of care towards individual members of the general public.'" *Newkirk*, 240 F. Supp. 3d at 437 (quoting *Edwards*, 688 S.E.2d at 129).

Plaintiffs' negligence claims do not rely on any "breach of a statutory duty"; thus, "the public duty rule is inapposite" to the instant negligent claims. *Newkirk*, 240 F. Supp. 3d at 437 (citing *Arthurs ex rel. Estate of Munn v. Aiken County*, 346 S.C. 97, 551 S.E.2d 579, 582 (2001) ("When, and only when, the plaintiff relies upon a statute as creating the duty does a doctrine known as the 'public duty rule' come into play.")); *Turner v. Taylor*, No. 7:09-CV-02858-JMC, 2011 WL 3794086, at *9 (D.S.C. Aug. 25, 2011) (similar); *Zelarno v. Taylor*, No. 7:09-CV-02860-JMC, 2011 WL 3794143, at *9 (D.S.C. Aug. 24, 2011) (similar).

As no statutory duty is invoked, Plaintiffs' negligence claims must rest on a common law duty. "When the duty is founded on the common law, we refer to this as a legal duty arising from special circumstances." *Newkirk*, 240 F. Supp. 3d at 437-38 (citation and internal marks omitted). A few courts have outlined what amounts to a "special circumstance" that creates a common law duty to act for officers. *Newkirk*, 240 F. Supp. 3d at 438 (explaining an officer's roadside traffic stop, placing the plaintiff under his control, created a duty "to do what a reasonable and prudent person would ordinarily have done under the circumstances of the situation" (citation omitted)); *Murphy v. Fields*, No. 3:17-CV-2914-CMC, 2019 WL 5417735, at *8 (D.S.C. Oct. 23, 2019), *appeal dismissed*, No. 19-2322, 2020 WL 2551049 (4th Cir. May 13, 2020) ("[O]nce [the officer] decided to enter the classroom and remove [the p]laintiff, he had a common law duty to use reasonable care in doing so." (internal marks and citations omitted)).

Yet where there exists no special circumstance creating a duty to act, the South Carolina Supreme Court has opined that "the police owe a duty to the public at large and not to any

individual." *Wyatt v. Fowler*, 484 S.E.2d 590, 592 (S.C. 1997) (citation omitted). "More specifically, the state does not owe its citizens a duty of care to proceed without error when it brings legal action against them." (*Id.* (citation omitted).) Defendants offer a handful of South Carolina Circuit Court decisions that cite to *Wyatt* in support of this proposition, reasoning that a generalized negligent investigation claim does not exist in South Carolina. (*See* ECF No. 27-1.) By contrast, Plaintiffs rely heavily on their unique interpretation of *Wyatt* discussed below, as well as the Magistrate Judge's reasoning, to insist otherwise. (*See* ECF No. 28 at 13-15.)

Here, the court finds Plaintiffs' negligence/gross negligence claims shall be dismissed. Plaintiffs have not alleged or otherwise shown that any special circumstance arose to create a common law duty to bind Defendants to act.[24] Moreover, the reasoning in *Wyatt* and subsequent cases all but confirm there is no common law negligence claim in this context, absent some other "special circumstance," in South Carolina; rather, the Sheriff of Lexington County simply "owe[s] a duty of care to the public at large and not to any one individual." *Washington v. Lexington Cty. Jail*, 523 S.E.2d 204, 207 (S.C. Ct. App. 1999) (citing *Wyatt*, 484 S.E.2d 590).

Plaintiffs contend that *Wyatt* barred the negligent claim at issue based upon the "public duty rule," rather than for lacking a common law duty, thus leaving an avenue to bring a common law negligence claim in this case. (ECF No. 28 at 13-14.) But upon review, the *Wyatt* court does not reference or identify any statute that was moored to the negligence claim at issue, instead referring to the claim as "a state law negligence cause of action for an unreasonable search and seizure against [the s]heriff." *Wyatt*, 484 S.E.2d at 592 (S.C. 1997) (deciding that "Wyatt did not establish [the s]heriff owed him a legal duty"). The South Carolina Court of Appeals likewise

---

[24] As discussed above, all state law claims have been dismissed against all Defendants other than Koon, as the Sheriff of Lexington County is the proper party for such claims. Plaintiffs have not disputed this finding.

confirmed the claim at issue in *Wyatt* was one for "common[]law negligence events arising out of the serving of an arrest warrant." *See Washington*, 523 S.E.2d at 207 (S.C. Ct. App. 1999). Accordingly, Plaintiffs' claims for negligence/gross negligence, all of which arise out of South Carolina's common law and lack any special circumstances, shall be dismissed.[25]

## V.    CONCLUSION

For the reasons set forth above, the court **GRANTS** in part and **DENIES** in part Defendants' Motions for Partial Summary Judgment. (ECF No. 13.) Plaintiff Carson's § 1983 claim for malicious prosecution against Bonnette in his individual capacity survives.[26] Summary judgment is granted as to all other claims against Defendants.[27] The court **ACCEPTS** in part, **REJECTS** in part, and **MODIFIES** in part the Magistrate Judge's Report and Recommendation

---

[25] Consequently, the court does not reach whether the SCTCA bars the instant claims. (*See* ECF No. 27 at 17 (citing S.C. Code § 15-78-60(6), (23)).)

[26] In other words, a portion of Plaintiff Carson's Fourth Cause of Action for Violation of 42 U.S.C. § 1983 survives against Bonnette in his individual capacity. The remaining § 1983 claim, as well as all other causes of action against Defendants, are dismissed. Additionally, all claims brought by Eva have been dismissed, as "the parties do not dispute that only Carson, and not Eva, can bring a claim pursuant to § 1983 against Bonnette." (ECF No. 23 at 30.) Eva is therefore dismissed from this lawsuit.

[27] The Magistrate Judge recommended dismissing all claims against all Defendants except for an unlawful seizure claim against Bonnette and negligence claims against Koon. (ECF No. 23 at 49-50.) However, the Report does not appear to contain any findings or analysis regarding Defendant John Does 1-5. Nor do the parties' briefs mention these Defendants. (*See* ECF Nos. 13-1, 14 through 16, 26 through 29.) As noted above, Plaintiffs did not object to dismissing all state law claims against all Defendants except for Koon. Nor did Plaintiffs object to the finding that Eleventh Amendment immunity shielded Rawl and Bonnette in their official capacities as law enforcement officers, which would obviously extend to John Does 1-5 for the same reasons. Thus, the only remaining claim potentially applicable to John Does 1-5 is a § 1983 claim in their individual capacities. However, the Complaint is unspecific, sparse, and conclusory as to the particular roles of any officers beyond Bonnette and Rawl regarding Carson's arrest and prosecution. (*See* ECF No. 1-1 at 8-9.) The factual record is likewise lacking. Indeed, even Plaintiffs' recitation of the facts appears to include no specific reference to any officers other than Bonnette and Rawl who were even tangentially involved in Carson's arrest. (ECF No. 14 at 2-11.) The court therefore finds it appropriate to dismiss all claims against Defendant John Does 1-5 at this stage in the litigation.

(ECF No. 23) and incorporates it herein by reference as set forth above.

     **IT IS SO ORDERED.**


                                      United States District Judge

March 29, 2021
Columbia, South Carolina